K & G Tool and Service Company, Incorporated, v. G G Fishing Tool Service

No. A-6577. Decided March 12, 1958.
Rehearing overruled June 4, 1958.
Second Motion for rehearring July 16, 1958.
(314 S.W. 2d Series 782)

596

*Cooper K. Ragan, John L. Russell* and *Robert Eigel,* all of Houston, for petitioners.

It being undisputed that respondents obtained their information by the violation of an abuse of a contract of confidential relations, it was error for the Court of Civil Appeals to hold that the plaintiffs should take nothing in their suit for damages and injunction. Smith v. Bolin, 153 Texas 486, 271 S.W. 2d 93; Dupont de Nemours Powder Co. v. Masland, 244 U.S. 100, Sup. Ct. 575; Culver v. Pickens, 142 Texas 87, 176 S.W. 2d 167.

*Tom Arnold, Arnold & Stidham, Allen & Allen* and *Claude T. Allen,* all of Houston, for respondents.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is a "trade secret" case which is in some respects similar to Hyde Corporation v. Huffines, this volume 566, 314 S.W. 2d 763.

At the conclusion of a jury trial the district court rendered judgment for $22,000 against defendants, G & G Fishing Tool Service and others and issued an injunction perpetually re-

straining defendants from wrongfully copying, making and using a magnetic fishing tool which was substantially the same as the tool devised by plaintiff, John J. Kirby, II and manufactured by his licensee and co-plaintiff, K & G Tool & Service Co., Inc. The magnetic tool was a device for recovering parts of broken drilling bits, drill stems and other foreign metallic materials from oil wells. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment that plaintiffs take nothing. See G & G Fishing Tools Service v. K & G Oil Tool and Service Co., Inc., 305 S.W. 2d 637.

The plaintiffs in the trial court, K & G Tool & Service Company, Inc. and John J. Kirby, II brought the case here as petitioners and writ of error was granted because of our tentative opinion that Wissman v. Boucher, 150 Texas 326, 240 S.W. 2d 278 did not control this case. The decision of the Court of Civil Appeals was also contrary to that of the Fort Worth Court of Civil Appeals in Hyde Corporation v. Huffines, 303 S.W. 2d 865 (this day affirmed), this volume 566, [314 S.W. 2d 763] as to the propriety of granting an injunction extending beyond the date of the issuance of a patent.

While other contentions are presented in the briefs, such as the application of the equitable doctrine of laches and the sufficiency of the injunctive decree which call for some discussion, the two matters above mentioned are deemed controlling. Primarily for the reasons stated in our opinion affirming the Fort Worth Court in Hyde Corporation v. Huffines, we are in agreement with the trial court upon the injunction feature of the case. We have likewise concluded that the magnetic tool here involved cannot properly be placed in the same category with the collapsable fishing rod of Wissman v. Boucher insofar as ease of reproduction is concerned. Other matters urged by respondents as the prevailing parties in the Court of Civil Appeals do not call for a reversal of the trial court's judgment and hence these holdings require that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

It appears that J. J. Kirby, II had been working upon a magnetic fishing tool for a number of years. He secured one patent on January 30, 1951 and on August 2, 1951 he filed another application. An amended or additional application was filed on January 30, 1952 which was described as being in part a continuation of the application of the preceding August. The 1952 application referred to the device as a "Magnetic Fishing Tool" and described the same as follows:

"This invention pertains to tools for removing undesired materials from a well and more particularly to a magnetic tool for fishing magnetic junk out of a hole in the earth drilled by the rotary method, from which hole oil or gas is to be produced. * * *

"It is the principal object of the invention to provide a magnetic fishing tool which will be more efficient in the removal of junk.

"A more specific object of the invention is to provide a magnetic fishing tool in which the distribution of the magnetic field is controlled so as to make it more effective for holding magnetic junk.

"A further object of the invention is to provide a magnetic fishing tool having fluid circulation means for clearing mud and detritus away from the magnetic junk wherein the fluid path is so positioned as to have a more effective field of action.

"Still another object of the invention is to provide a magnetic fishing tool having a rotary shoe for clearing heavy and consolidated materials away from the magnetic junk wherein the shoe is positioned so its field of mechanical action cooperates more effectively with the magnetic and fluid-dynamic fields.

"Another object of the invention is to provide a magnetic fishing tool which is more rugged and durable and better protected against accidental damage.

"A further object of the invention is to provide a magnetic fishing tool which will more firmly hold the magnetic junk or fish.

"Another object of the invention is to provide a magnetic fishing tool capable of holding a larger number of separate fish.

"Still another object of the invention is to provide a magnetic fishing tool which will more nearly assure a one hundred percent removal of all the junk.

"Another object of the invention is to provide a magnetic fishing tool that is more easily manufactured and repaired and maintained."

It appears that the idea of using a magnet to remove "fish" or metallic substances from the hole of a drilling well was not new to the oil industry. Articles concerning the use of a magnet for such purposes had appeared in technical journals prior to the date of business negotiations between the parties to this litigation. In fact the record discloses that some five or six patents upon magnetic devices for removing foreign metallic matter from well holes had been applied for or issued prior to March of 1951. A number of these inventions bore the same descriptive designation as that used by Kirby, namely, a "Magnetic Fishing Tool." It further seems that the metallurgy Division of the Chemical Department of the General Electric Corporation had widely advertised a magnet made of metal which was called "Alnico." These magnets were said to be suitable for a number of uses, such as holding necktie racks in place, providing fasteners for metal doors and removing nails from parking areas and driveways. It appears that the Kirby tool utilized an Alnico magnet as an effective feature in its operation.

In 1951 K & G Oil Tool & Service Co., Inc. was formed and licensed by Kirby to manufacture his magnetic tools and some of them were leased for oil field use. In the early part of 1952 K & G entered into an agreement with G & G Fishing Tools Service whereby G & G agreed to sub-lease the K & G tool to drilling operators for twenty-five per cent of the rentals charged. K & G also leased from G & G certain space in a warehouse located in Duncan, Oklahoma for the storage of its magnetic tools.

The jury made a number of special issues findings as to agreements between K & G and G & G as well as actions taken by G & G in violation of such agreements. The jury found:

1. That during March 1952 it was mutually agreed between Robert Garrett (representing K & G) and Cecil Bond (representing G & G) that during the time the G & G Fishing Tool Service Co., Inc. was handling the K & G magnetic fishing tool, no one was to disassemble said tool.

2. That, in making such agreement, it was mutually understood that the purpose of such agreement was to guard against anyone determining the internal construction of the tool by way of examining the interior thereof.

3. That, at some time before August 15, 1952, the G & G Fishing Tool Service, Inc., acting by or through some of its agents, servants, incorporators or directors, disassembled the

K & G fishing tool for the purpose of making an examination thereof.

4. That such act was done for the purpose of making an examination of the interior construction of the K & G tool in question.

5. That a K & G magnetic fishing tool was disassembled by the G & G Fishing Tool Service, Inc., acting by or through some of its agents, servants or representatives, for the purpose of making a similar tool.

6. That the defendant G & G Fishing Tool Service, Inc., acting through its agents, servants or representatives, used the information obtained by disassembling the K & G magnetic fishing tool to make one substantially the same as the K & G magnetic tool.

7. That the fishing tool constructed from information gained by disassembling the K & G tool is substantially the same tool that is now being used by the G & G Fishing Tool Service, Inc., G & G Fishing Magnets, Inc., and their affiliated interests in their operations.

8. That before March 1952 the internal construction of the K & G magnetic fishing tool was not known to persons engaged in the oil well fishing tool business.

The defensive issues submitted and their answers were as follows:

9. "Do you find from a preponderance of the evidence that the G & G Magnetic Fishing Tool was constructed from information obtained exclusively from sources other than the disassembly, if any, of the K & G Magnetic Fishing Tool? Answer: We do not.

10. "When do you find from a preponderance of the evidence that the plaintiffs or either of them or their officers acquired knowledge that A. C. Green, Jr., (connected with G & G) was making a magnetic fishing tool? Answer: August, 1952.

11. "Do you find from a preponderance of the evidence that from the date that you have stated in response to Special Issue No. 9, Sic. (10) to the date of the filing of this suit, the plaintiffs or either of them or their officers knew that the de-

fendants were manufacturing magnetic fishing tools? Answer: We do.

12. "Do you find from a preponderance of the evidence that the plaintiffs or either of them or their officers were familiar in a general way with the cost of the manufacturing of magnetic fishing tools such as those which were being manufactured by the defendants herein? Answer: We do.

13. "Do you find from a preponderance of the evidence that the plaintiffs or their representatives, either before or during the use of the warehouse at Duncan, Oklahoma by the K & G Oil Tool and Service Company, Inc., ever disclosed to any person, other than employees or others in a confidential relationship, the internal construction of the K & G magnetic fishing tool? Answer: We do not.

14. "Do you find from a preponderance of the evidence that the internal construction of the K & G magnetic tool can be determined by an examination of the tool without disassembling it, to the extent that another tool can be constructed that would perform the same function by substantially the means employed in the K & G magnetic tool? Answer: We do."

Special Issue No. 15 related to damages.

The trial judge upon motion disregarded the jury's answer to Special Issue No. 14 on the ground that there was no evidence to raise such issue or to sustain the finding of the jury thereon and because such interrogatory did not constitute an ultimate fact issue in the case. Judgment was accordingly rendered for petitioner-plaintiffs.

The Court of Civil Appeals was of the opinion that petitioners' magnetic fishing tool was not subject to protection as a "trade secret," primarily because of the jury's answer to Special Issue No. 14. There were witnesses who testified that they could reconstruct the Kirby tool without first disassembling it. It may be that they could, but this hardly reaches the controlling point or issue in the case. According to the jury's findings, where they were not attacked, G & G did not learn how to make the Kirby tool or a device similar thereto by observing it in an assembled or unbroken condition but learned of its internal proportions, qualities and mechanisms by taking it apart despite an agreement that it would not do so. We have here the violation of a confidence and the breach of a contract. Under such

circumstances, the injured party is entitled to full relief, both legal and equitable, unless there exists some compelling reason of public policy or practicability which directs the withholding of such relief.

■ The factual situation disclosed by the jury's findings is not new to American jurisprudence. The basis of the trade secret case is a "breach of a contract or wrongful disregard of confidential relationships." Becher v. Contoure Laboratories, 279 U.S. 388, 49 Sup. Ct. 356, 73 L. ed. 752; E. I. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 37 Sup. Ct. 575, 61 L. ed. 1016. In Smith v. Dravo Corporation, 203 Fed. 2d 369, 374, the Seventh Circuit Court of Appeals has occasion to examine a factual situation similar to that before us. While the federal court's jurisdiction depended upon a diversity of citizenship and it was primarily concerned with the law of the State of Pennsylvania, we think the statements of law contained therein correctly represent the prevailing American rule upon the question and hence we quote somewhat at length therefrom. In the opinion the Court of Appeals said:

"* * * In Pressed Steel Car Co. v. Standard Steel Car Co., 210 Pa. 464, 60 Atl. 4, 7, plaintiff sought to protect its secret construction design for railroad cars. These plans had been obtained by defendant through a known breach of confidence. It was urged by defendant that because it could have obtained the design from an inspection of the car (which was in public use) its use of knowledge gained through improper means would be condoned. In short, defendant suggested, as does defendant here, that the existence of a lawful means of acquiring the information precluded recovery for the employment of unlawful means. The court said:

" '* * * these engineers and draftsmen * * * should have been able to measure the cars made by the company, and to produce in a short time detailed and practical drawings from which the cars could be constructed. They did not do this, for the very obvious reason that blue prints of drawings were available and were accurate. * * *.'

"The court then affirmed recovery for the plaintiff.

"Thus, Pennsylvania will not deny recovery merely because the design could have been obtained through inspection. Rather, the inquiry in that jurisdiction appears to be: How did defendant learn of plaintiffs' design? And this, we regard as the prop-

er test. It recognizes the very nature of the type of wrong with which we are here concerned. Confidential business information is not given protection merely as a reward to its accumulator. If the creator is entitled to reward it is available to him in the patent and copyright statutes. Nims, Unfair Competition and Trade Marks, Sec. 142. Instead our function is that of condemning 'the employment of improper means to procure the trade secret.' Restatement, Torts, Sec. 757, comment. Those who gain their information improperly are brought to book in recognition of 'the general principle that intentionally inflicted harm is actionable unless privileged.' Protection and Use of Trade Secrets, 64 Harv. L. Rev. 976.

"It is unquestionably lawful for a person to gain possession, through proper means, of his competitor's product and, through inspection and analysis, create a duplicate, unless, of course, the item is patented. But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form an escape the efforts of inspection and analysis. 'The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means.' Nims, Unfair Competition and Trade Marks, Sec. 148.

"This text citation is the distillate of many judicial decisions. Thus, in A. O. Smith Corp. v. Petroleum Iron Works Co., 6 Cir., 73 F. 2d 531, 538, the court said: 'The mere fact that the means by which a discovery is made are obvious * * * cannot * * * advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtain the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer.' And in Shellmar Products Co. v. Allen-Qualley Co., 7 Cir., 36 F. 2d 623, 625, this court announced: 'Whether it would have been possible to have discovered and purchased the Olsen patent, without the information disclosed to appellant in confidence, it is not necessity to determine, because it is clear from the record that by a breach of confidence the information was disclosed and used as a basis for the search that was made.' And in Tabor v. Hoffman, 118 N.Y. 30, 23 N.E. 12, 13, this is the language: 'But, because this discovery may be possible by fair means, it would not justify a discovery by unfair means * * *.'

"It is, therefore, our conclusion, that the District Court ap-

plied an erroneous conclusion of law to the facts at hand. Here was no simple device, widely circulated, the construction of which was ascertainable at a glance. Cf. Carver v. Harr, 132 N.J. Eq. 207, 27 A. 2d 895 and Northup v. Reish, 7 Cir., 200 F. 2d 924. If such were the case our problem would be simple. Instead we are concerned with a relatively complex apparatus; designed to carry large and heavy amounts of cargo; proper inspection of which was, perhaps, accessible to defendant but, in no way shown to have been made. Under such circumstances the District Court's conclusion that plaintiffs no longer possessed a trade secret at the time of their negotiations with defendant was erroneous."

Northup v. Reish, 200 F. 2d 924, 927, referred to in Smith v. Dravo Corporation as being distinguishable from the holdings therein enunciated was also a case from the Seventh Circuit coming within the federal jurisdiction, i.e., a combination suit for patent infringement and a related "claim of unfair competition." 28 U.S.C.A., Section 1338. The factual situation in Northup v. Reish and that disclosed by the report of Wissman v. Boucher, 150 Texas 326, 240 S.W. 2d 278 are somewhat similar. The device involved in the federal case was an oven liner consisting of a rectangular sheet of embossed aluminum foil with the edges turned over to form a hem. The purposes of the liner was to hold the juices which emerged from the food during the baking or broiling process. The oven liner was held not pattentable and not subject to protection as a trade secret. The Court of Appeals said:

"* * * The containers in which plaintiff's oven liners were sold told the public everything that the plaintiff had told Reish about the oven liners. After the liners had been so marketed the plaintiff no longer had any secret about their composition, their style of embossment, their size, their shape, the method of their use, nor their disposal after they were too soiled for further use.

"We do not mean to imply by our emphasis on the fact that plaintiff's 'secret' was only an 'analogous use' for sheets of embossed aluminum foil, that a 'secret' must be a patentable invention in order to be protected by equity against its unauthorized use by one to whom the secret has been disclosed in confidence. We are only trying to emphasize the fact that we are not dealing here with a secret process, machine or method of manufacturing, but only with a simple use which was necessarily

fully disclosed to the public by the plaintiff when he marketed his oven liners."

In Wissman v. Boucher, [150 Texas 326, 240 S.W. 2d 279] this Court, in discussing a metallic fishing rod that would collapse into one piece and thus serve as a walking stick, said:

"* * * There is no patent or claim of patentable device in respect of the pole as made by the plaintiff and while the evidence is as confused as it is abundant, it seems clear enough that, even making the doubtful assumption of novelty in the plaintiff's idea, his pole is based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced machinist that might see one for the first time or purchase it on the open market. Under these latter circumstances, the exposure of the device to the public by advertisement or sale definitely operates to destroy any legal protection the claimed originator might otherwise assert on the basis of a trade secret."

The case does not hold that a device must be the product of "invention" or subject to patent under the Acts of Congress before it will be protected as a trade secret and respondents do not so contend. Nor does it adopt a rule similar to that applicable in patent cases, i.e., that a patent will not issue when the device is nothing more than an improvement obvious to a good mechanic skilled in the art. In the American Law Institute's Restatement of the Law it is said:

"A trade secret may be a device or process which is patentable; but it need not be that. It may be a device or process which is clearly anticipated in the prior art or one which is merely a mechanical improvement that a good mechanic can make. Novelty and invention are not requisite for a trade secret as they are for patentability." 4 Restatement of the Law of Torts, p. 6, Section 757. See also, A. O. Smith Corporation v. Petroleum Iron Works Co., 6th Cir., Court of Appeals, 73 F. 2d 531.

Wissman v. Boucher does not militate against the rule of the Restatement above quoted. The controlling factor of the case was the simple and obvious nature of the device involved. It is a case similar to Northup v. Reish, 200 F.2d 924 and hence distinguishable from Smith v. Dravo Corporation, 203 F.2d 369.

■ The record in the present case indicates that the K & G tool is no simple device, "the construction of which is ascertainable

at a glance." The use of a magnet to attract metallic substances is of course devoid of novelty. The making of a tool embodying this principle which is effective in meeting the needs of the industry in clearing well holes of deleterious metal particles is another matter. The record shows numerous patents have been issued for "magnetic fishing tools" and that much work and ingenuity has been applied to the development of a practical and successful device. The evidence indicates that the K & G tool was successful and hence the owners of the device and manufacturing process should be protected in the fruits of their engenuity against those who, according to the jury's findings, are attempting to deprive them of such advantages by a breach of confidence and a failure to abide by their contractual obligations.

In the law of trade secrets, embracing mechanical engines, chemical formulae, confidential lists and the like, matters ranging from sugar in tea for sweetening purposes to the most complicated machines will be encountered. Questions as to classification will arise and their solution may not always be free from difficulties. Examples may be more helpful than definition or attempted redefinition. In our opinion the K & G tool cannot be classified as a simple and obvious device belonging in the same category as the combination fishing rod and walking stick of Boucher v. Wissman, and the aluminum foil oven lining of Northup v. Reish.

■ This being true, injunctive relief cannot be considered a futile thing like enjoining one from make use of knowledge that is common to all. Nor does the injunction run counter to a public policy which discourages contracts which tend to lessen competition. The protection of a trade secret is a well-recognized objective of equity and we are not here concerned with a covenant to manufacture or sell a device to one person only as was the case in Boucher v. Wissman when reduced to its ultimate essentials.

As to the injunction's extending beyond the date of the issuance of the patent, our holdings in Hyde Corporation v. Huffines, this Volume 566, 314 S.W. 2d 763, are applicable here. In our opinion the better rule as well as the one supported by the weight of authority in the United States is that represented by such cases as Shellmar Products Co. v. Allen-Qualley Co., 7th Cir., Ct. of App., 87 F.2d 104, A. O. Smith Corporation v. Petroleum Iron Works, 6th Cir. Ct. of App., 74 F.2d 934 and Adolph Gottscho, Inc. v. American Marking Corporation, 18

N.J. 467, 114 Atl. 2d 438. Such rule was followed by us in Hyde Corporation v. Huffines rather than the one announced in Picard v. United Aircraft Corporation, 128 F.2d 632 and Commar Products Corporation v. Universal Slide Fastener Co., 172 F.2d 150 (both by the Second Circuit Court of Appeals) which was adopted by the Court of Civil Appeals in the present case.

■ Respondents contended in the Court of Civil Appeals that despite the fact that petitioners' claim was not barred by the statute of limitations it should nevertheless be regarded in equity as a stale demand. As supporting this theory they rely upon the jury's answers to Special Issues Nos. 10, 11 and 12 (heretofore set out) whereby the jury found that petitioners acquired knowledge in August of 1952 that A. C. Green, Jr., one of the respondents herein and an official of G & G Fishing Tools Service, was making a magnetic fishing tool; that petitioners knew respondents were making magnetic fishing tools from August of 1952 until this suit was filed on August 20, 1953, and that petitioners were familiar in a general way with the cost of manufacturing the tools which were being made by respondents.

It is said that under the peculiar circumstances of this case as evidenced by the jury's findings above mentioned, petitioners should have brought their suit within approximately one year after the discovery of August, 1952, despite the fact that the statutes of limitation provide for a longer period. It seems that the gravamen of this argument is that although it appears that petitioners did notify respondents that they intended to file a "patent suit," they said nothing about a "trade secret suit." This difference may be important in the trial of a lawsuit, but as a warning to a person that a certain course of conduct will result in litigation, the distinction is of minor importance. As a rule equity follows the law and generally in the absence of some element of estoppel or something akin thereto, the doctrine of laches will not bar a suit short of the period set forth in the limitation statutes. Considering the past business relations between the parties and the lack of any positive action or deliverate nonaction on the part of petitioners which could reasonably be considered as having induced respondents to act to their disadvantage, there is no basis for a shortening of the limitation period, so to speak. It is reasonably apparent that respondent knew they would be involved in some sort of lawsuit if they persisted in their course of action and they must be regarded as having assumed the risks incident thereto.

■ Respondents' complaint as to the form of the injunction will

not warrant a reversal. There are a number of ways in which a decree may be worded in cases such as this, and certain methods may be superior to others. The trial judge in the present case summarized the jury's finding and recited in the decree that respondents in breach of a confidential relationship had copied the magnetic fishing tool of petitioners "and after copying same did manufacture, lease, operate, use, and distribute for use by others, said magnetic fishing tool and did so from at least August 1952, and have so engaged down to the present time" and will continue to do so, unless restrained "to the irreparable injury of plaintiffs herein because of the inability of plaintiffs to trace each and every such tool and determine how much loss of revenue would result to plaintiffs from such illegal and unlawful use of the copied tool, and particularly since the magnetic fishing tool so manufactured, used, leased, and distributed and operated by defendants is substantially the same as the magnetic fishing tool of plaintiffs and works in substantially the same fashion, so that person using the magnetic fishing tool of defendants would in large measure fail and refuse to hire and use plaintiffs' magnetic fishing tool; * * *."

Based upon such findings and recitals, respondents were ordered to "desist from making, using, leasing, selling, manufacturing, operating, copying or otherwise representing themselves to be the makers, manufacturers, lessors of magnetic fishing tools substantially the same as that of the plaintiffs (petitioners) herein, and from using in any way the confidential information obtained by defendants (respondents) from an examination of plaintiffs' magnetic fishing tool."

Future problems of enforcement applicable to most every type or form of injunction may be imagined. The decree is, however, to be interpreted in the light of its recitals and findings. It was found that respondents were wrongfully making a tool substantially the same as that of petitioners. They were ordered to desist. The decree is sufficiently definite to be enforced.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

Opinion delivered March 12, 1958.

ON MOTION FOR REHEARING

MR. JUSTICE NORVELL delivered the opinion of the Court.

Petitioners have requested and are granted leave to amend

their application for writ of error. The points sought to be enlarged upon and made more specific were clearly preserved in their brief and motion for rehearing in the Court of Civil Appeals. Hearne v. Bradshaw, this volume 453, 312 S.W. 2d 948. A similar amendment was permitted in Hyde Corporation v. Huffines, this volume 566, 314 S.W. 2d 763.

Respondents have filed an able and vigorous motion for rehearing. With the exception hereinafter noted, the original opinion adequately covers the case and further discussion would not be profitable.

■ It is urged on behalf of the respondent C. P. Buckler that we should consider and decide a point raised in his behalf, but decided against him in the Court of Civil Appeals, although no mention was made thereof in the reply to the application for writ of error. The judgment of the Court of Civil Appeals was that petitioners take nothing against C. P. Buckler as well as the other parties who are respondents in this Court. However, that Court expressly overruled appellants' (respondents') Point No. 7. Thomas v. Kansas City So. Ry. Co., 305 S.W. 2d 642. This point may be duplicitious but considering the statement and argument made thereunder, Fambrough v. Wagley, 140 Texas 577, 169 S.W. 2d 478, it clearly asserts the proposition that the district court erred in including C. P. Buckler in the judgment of damages because there is no evidence supporting this portion of the judgment. The sustaining of Point No. 7 would therefore support the take-nothing judgment which was rendered in Buckler's favor by the Court of Civil Appeals. Having concluded that certain points contained in the application for writ of error were good and would require a reversal of the judgment of the lower appellate court, absent some additional consideration or circumstance, it becomes our duty to examine the brief of the prevailing party in the Court of Civil Appeals to see if the judgment of that Court can be affirmed on any other point which the Court had before it. See, Calvert, "Some Problems of Supreme Court Review", 21 Texas Bar Journal 75, l.c. 112, citing Jordon v. Morten Inc. Co., 127 Texas 37, 90 S.W. 2d 241, 242; Dallas Ry. & Term. Co. v. Bailey, 151 Texas 359, 250 S.W. 2d 379, 383; Walker v. Texas Emp. Ins. Ass'n., 155 Texas 617, 291 S.W. 2d 298, 302.

■ The trial court rendered a money judgment against two corporate defendants, G & G Fishing Tools Service and G & G Fishing Magnets, Inc. and four individuals, A. C. Green, Jr., A. C. Green, Sr., Cecil V. Bond and C. P. Buckler. It appears that

Buckler was a minority stockholder and director of the corporate defendants, as well as a member of a partnership known as G & G Machine Works which was not a party to this litigation. The only reference to the statement of facts contained in the briefs in the Court of Civil Appeals is to the testimony of C. P. Buckler which appears in deposition form. According to Buckler his primary occupation is that of business agent for the White Deer Corporation which owns large tracts of land in Gray, Robertson, Hudspeth and Carson Counties, Texas. A. C. Green, Jr., is his son-in-law and Buckler's participation in the machine tool business has consisted of financial aid furnished to his son-in-law. He was a partner with A. C. Green, Sr. and A. C. Green, Jr. in the firm known as G & G Machine Works, but did not actively participate in the management of the business. G & G Fishing Tool Service and G & G Fishing Magnets, Inc. started as partnerships and were later incorporated with Buckler becoming a stockholder and director of each. He did not, however, become active in the management of such corporations; did not participate in the discussions relative to the manufacturing of the G & G magnet; did not know where the design came from in the beginning, and had no knowledge of arrangements between G & G Fishing Tool Service and G & G Fishing Magnets Inc. on one hand and K & G Oil Tools and Service., Inc. on the other, with reference to the handling storage or use of K & G fishing magnets. He was not a mechanic and knew nothing of the design and construction of magnetic fishing tools and was not consulted about such matters.

We are cited to no testimony which contradicts that given by Buckler. All we have are the circumstances that Buckler was the father-in-law of A. C. Green, Jr.; that they were partners with A. C. Green, Sr. in G. & G. Machine Shop; that (as indicated by the evidence) the shop of the partnership was used by A. C. Green, Jr. and others to break open and examine the Kirby tool, and that Buckler was a stockholder and director of corporations which thereafter manufactured a magnetic tool similar to that made by Kirby and his company. These are not sufficient in law to rendered Buckler personally liable in damages.

According to the jury, the disassembling of the Kirby tool was in violation of an express agreement. It was also in the nature of a tortious action in that it involved a breach of confidence. While in the petition there may be some suggestion of a conspiracy to unlawfully acquire knowledge of petitioners' trade secrets relating to the manufacture of fishing magnets,

the appellees in the Court of Civil Appeals (petitioners here) sought to support the money judgment against Buckler upon the theory of partnership. A non-participating partner is ordinarily not personally liable for the wrongful, tortious or criminal acts of the acting partner unless such acts are within the scope of the partnership's business or were constented to, authorized, ratified or adopted by the non-participating partner. Corona Petroleum Co. v. Jameson, Texas Civ. App., 146 S.W. 2d 512, 516, wr. dism., correct judgment, 32 Texas Jur. 348, Partnership Sec. 83, Vrabel v. Acri, 156 Ohio St. 467, 103 N.E. 2d 564, 30 A.L.R. 853. And it further appears that "The cases are agreed that a director or officer of a corporation is not liable, merely because of his official character, for the fraud or false representations of the other officers or agents of the corporation or for fraud attributable to the corporation itself, if such director or officer is not personally connected with the wrong and does not participate in it." 13 Am. Jur. 1020, Corporations Sec. 1088. C. F. Schreyer v. Casco Products Corp., D.C. 97 F. Supp. 159, 1.c. 169, rev. in pt. 190 F.2d 921.

Respondents' motion for rehearing is granted to the extent of modifying the trial court's judgment by eliminating therefrom the money judgment awarded against C. P. Buckler and in favor of the petitioners. In all other respects such motion is overruled. Except in the particular mentioned, the judgment of the Court of Civil Appeals is reversed and the judgment of the trial court as reformed, by eliminating the money recovery against C. P. Buckler, is affirmed.

Opinion delivered June 4, 1958.

MR. JUSTICE SMITH, dissenting.

I agree with the opinion on Motion of Rehearing except that portion of the opinion which eliminates the money judgment awarded C. P. Buckner and in favor of the petitioners.

Opinion delivered June 4, 1958.

MR. JUSTICE WALKER, dissenting.

This is an even weaker case for injunctive relief after issuance of the patent than Hyde Corporation v. Huffines, this volume 566, 314 S.W. 2d 763, because here respondents have no head start or other advantage over petitioners in the marketing of their respective products. Although respondents began

manufacturing and leasing their fishing tool before the secret was published to the world, they have been required to pay petitioners all profits derived therefrom up to the grant of the patent. I would apply the rule of Commar Products Corporation v. Universal Slide Fastener Co., 2nd Cir., 172 F. 2d 150, and affirm the judgment of the Court of Civil Appeals in so far as the permanent injunction is concerned.

Opinion delivered June 4, 1958.

Second rehearing overruled July 16, 1958.