**E. I. duPONT deNEMOURS & COMPANY, Inc., Plaintiff-Appellee,**

v.

**Rolfe CHRISTOPHER et al., Defendants-Appellants.**

**No. 28254.**

United States Court of Appeals, Fifth Circuit.

July 20, 1970.

Rehearing Denied and Rehearing En Banc Denied Aug. 25, 1970.

---

David J. Kreager, John G. Tucker, Orgain, Bell & Tucker, Beaumont, Tex., for defendants-appellants.

Robert Q. Keith, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., William E. Kirk, Jr., Wilmington, Del., for plaintiff-appellee.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

GOLDBERG, Circuit Judge:

This is a case of industrial espionage in which an airplane is the cloak and a camera the dagger. The defendants-appellants, Rolfe and Gary Christopher, are photographers in Beaumont, Texas. The Christophers were hired by an unknown third party to take aerial photographs of new construction at the Beaumont plant of E. I. duPont deNemours & Company, Inc. Sixteen photographs of the DuPont facility were taken from the air on March 19, 1969, and these photographs were later developed and delivered to the third party.

DuPont employees apparently noticed the airplane on March 19 and immediately began an investigation to determine why the craft was circling over the plant. By that afternoon the investigation had disclosed that the craft was involved in a photographic expedition and that the Christophers were the photographers. DuPont contacted the Christophers that same afternoon and asked them to reveal the name of the person or corporation requesting the photographs. The Christophers refused to disclose this information, giving as their reason the client's desire to remain anonymous.

Having reached a dead end in the investigation, DuPont subsequently filed suit against the Christophers, alleging that the Christophers had wrongfully obtained photographs revealing DuPont's trade secrets which they then sold to the undisclosed third party. DuPont contended that it had developed a highly secret but unpatented process for producing methanol, a process which gave DuPont a competitive advantage over other producers. This process, DuPont alleged, was a trade secret developed after much expensive and time-consuming research, and a secret which the company had taken special precautions to safeguard. The area photographed by the Christophers was the plant designed to produce methanol by this secret process, and because the plant was still under construction parts of the process were exposed to view from directly above the construction area. Photographs of that area, DuPont alleged, would enable a skilled person to deduce the secret process for making

methanol. DuPont thus contended that the Christophers had wrongfully appropriated DuPont trade secrets by taking the photographs and delivering them to the undisclosed third party. In its suit DuPont asked for damages to cover the loss it had already sustained as a result of the wrongful disclosure of the trade secret and sought temporary and permanent injunctions prohibiting any further circulation of the photographs already taken and prohibiting any additional photographing of the methanol plant.

The Christophers answered with motions to dismiss for lack of jurisdiction and failure to state a claim upon which relief could be granted. Depositions were taken during which the Christophers again refused to disclose the name of the person to whom they had delivered the photographs. DuPont then filed a motion to compel an answer to this question and all related questions.

On June 5, 1969, the trial court held a hearing on all pending motions and an additional motion by the Christophers for summary judgment. The court denied the Christophers' motions to dismiss for want of jurisdiction and failure to state a claim and also denied their motion for summary judgment. The court granted DuPont's motion to compel the Christophers to divulge the name of their client. Having made these rulings, the court then granted the Christophers' motion for an interlocutory appeal under 28 U.S.C.A. § 1292(b) to allow the Christophers to obtain immediate appellate review of the court's finding that DuPont had stated a claim upon which relief could be granted. Agreeing with the trial court's determination that DuPont had stated a valid claim, we affirm the decision of that court.

This is a case of first impression, for the Texas courts have not faced this precise factual issue, and sitting as a diversity court we must sensitize our *Erie* antennae to divine what the Texas courts would do if such a situation were presented to them. The only question involved in this interlocutory appeal is whether DuPont has asserted a claim upon which relief can be granted. The Christophers argued both at trial and before this court that they committed no "actionable wrong" in photographing the DuPont facility and passing these photographs on to their client because they conducted all of their activities in public airspace, violated no government aviation standard, did not breach any confidential relation, and did not engage in any fraudulent or illegal conduct. In short, the Christophers argue that for an appropriation of trade secrets to be wrongful there must be a trespass, other illegal conduct, or breach of a confidential relationship. We disagree.

It is true, as the Christophers assert, that the previous trade secret cases have contained one or more of these elements. However, we do not think that the Texas courts would limit the trade secret protection exclusively to these elements. On the contrary, in Hyde Corporation v. Huffines, 1958, 158 Tex. 566, 314 S.W. 2d 763, the Texas Supreme Court specifically adopted the rule found in the Restatement of Torts which provides:

"One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him * * *."

Restatement of Torts § 757 (1939).

Thus, although the previous cases have dealt with a breach of a confidential relationship, a trespass, or other illegal conduct, the rule is much broader than the cases heretofore encountered. Not limiting itself to specific wrongs, Texas adopted subsection (a) of the Restatement which recognizes a cause of action for the discovery of a trade secret by any "improper" means.

The defendants, however, read Furr's Inc. v. United Specialty Advertising Co., Tex.Civ.App.1960, 338 S.W.2d 762, writ ref'd n.r.e., as limiting the Texas rule to breach of a confidential

relationship. The court in *Furr's* did make the statement that

"The use of someone else's idea is not automatically a violation of the law. It must be something that meets the requirements of a 'trade secret' *and has been obtained through a breach of confidence* in order to entitle the injured party to damages and/or injunction. 338 S.W.2d at 766 (emphasis added).

We think, however, that the exclusive rule which defendants have extracted from this statement is unwarranted. In the first place, in *Furr's* the court specifically found that there was no trade secret involved because the entire advertising scheme claimed to be the trade secret had been completely divulged to the public. Secondly, the court found that the plaintiff in the course of selling the scheme to the defendant had voluntarily divulged the entire scheme. Thus the court was dealing only with a possible breach of confidence concerning a properly discovered secret; there was never a question of any impropriety in the discovery or any other improper conduct on the part of the defendant. The court merely held that under those circumstances the defendant had not acted improperly if no breach of confidence occurred. We do not read *Furr's* as limiting the trade secret protection to a breach of confidential relationship when the facts of the case do raise the issue of some other wrongful conduct on the part of one discovering the trade secrets of another. If breach of confidence were meant to encompass the entire panoply of commercial improprieties, subsection (a) of the Restatement would be either surplusage or persiflage, an interpretation abhorrent to the traditional precision of the Restatement. We therefore find meaning in subsection (a) and think that the Texas Supreme Court clearly indicated by its adoption that there is a cause of action for the discovery of a trade secret by any "improper means." Hyde Corporation v. Huffines, *supra.*

The question remaining, therefore, is whether aerial photography of plant construction is an improper means of obtaining another's trade secret. We conclude that it is and that the Texas courts would so hold. The Supreme Court of that state has declared that "the undoubted tendency of the law has been to recognize and enforce higher standards of commercial morality in the business world." Hyde Corporation v. Huffines, *supra* 314 S.W.2d at 773. That court has quoted with approval articles indicating that the *proper* means of gaining possession of a competitor's secret process is "through inspection and analysis" of the product in order to create a duplicate. K & G Tool & Service Co. v. G & G Fishing Tool Service, 1958, 158 Tex. 594, 314 S.W.2d 782, 783, 788. Later another Texas court explained:

"The means by which the discovery is made may be obvious, and the experimentation leading from known factors to presently unknown results may be simple and lying in the public domain. But these facts do not destroy the value of the discovery and will not advantage a competitor who by unfair means obtains the knowledge *without paying the price expended by the discoverer.*" Brown v. Fowler, Tex.Civ. App.1958, 316 S.W.2d 111, 114, writ ref'd n.r.e. (emphasis added).

We think, therefore, that the Texas rule is clear. One may use his competitor's secret process if he discovers the process by reverse engineering applied to the finished product; one may use a competitor's process if he discovers it by his own independent research; but one may not avoid these labors by taking the process from the discoverer without his permission at a time when he is taking reasonable precautions to maintain its secrecy. To obtain knowledge of a process without spending the time and money to discover it independently is *improper* unless the holder voluntarily discloses it or fails to take

reasonable precautions to ensure its secrecy.

In the instant case the Christophers deliberately flew over the DuPont plant to get pictures of a process which DuPont had attempted to keep secret. The Christophers delivered their pictures to a third party who was certainly aware of the means by which they had been acquired and who may be planning to use the information contained therein to manufacture methanol by the DuPont process. The third party has a right to use this process only if he obtains this knowledge through his own research efforts, but thus far all information indicates that the third party has gained this knowledge solely by taking it from DuPont at a time when DuPont was making reasonable efforts to preserve its secrecy. In such a situation DuPont has a valid cause of action to prohibit the Christophers from improperly discovering its trade secret and to prohibit the undisclosed third party from using the improperly obtained information.

We note that this view is in perfect accord with the position taken by the authors of the Restatement. In commenting on improper means of discovery the savants of the Restatement said:

"f. *Improper means of discovery.* The discovery of another's trade secret by improper means subjects the actor to liability independently of the harm to the interest in the secret. Thus, if one uses physical force to take a secret formula from another's pocket, or breaks into another's office to steal the formula, his conduct is wrongful and subjects him to liability apart from the rule stated in this Section. Such conduct is also an improper means of procuring the secret under this rule. But means may be improper under this rule even though they do not cause any other harm than that to the interest in the trade secret. Examples of such means are fraudulent misrepresentations to induce disclosure, tapping of telephone wires, eavesdropping or other espionage. A complete catalogue of improper means is not possible. In general they are means which fall below the generally accepted standards of commercial morality and reasonable conduct." Restatement of Torts § 757, comment f at 10 (1939).

In taking this position we realize that industrial espionage of the sort here perpetrated has become a popular sport in some segments of our industrial community. However, our devotion to free wheeling industrial competition must not force us into accepting the law of the jungle as the standard of morality expected in our commercial relations. Our tolerance of the espionage game must cease when the protections required to prevent another's spying cost so much that the spirit of inventiveness is dampened. Commercial privacy must be protected from espionage which could not have been reasonably anticipated or prevented. We do not mean to imply, however, that everything not in plain view is within the protected vale, nor that all information obtained through every extra optical extension is forbidden. Indeed, for our industrial competition to remain healthy there must be breathing room for observing a competing industrialist. A competitor can and must shop his competition for pricing and examine his products for quality, components, and methods of manufacture. Perhaps ordinary fences and roofs must be built to shut out incursive eyes, but we need not require the discoverer of a trade secret to guard against the unanticipated, the undetectable, or the unpreventable methods of espionage now available.

In the instant case DuPont was in the midst of constructing a plant. Although after construction the finished plant would have protected much of the process from view, during the period of construction the trade secret was exposed to view from the air. To require DuPont to put a roof over the unfinished plant to guard its secret would impose an enormous expense to prevent nothing more than a school boy's trick. We introduce here no new or radical ethic

since our ethos has never given moral sanction to piracy. The market place must not deviate far from our mores. We should not require a person or corporation to take unreasonable precautions to prevent another from doing that which he ought not do in the first place. Reasonable precautions against predatory eyes we may require, but an impenetrable fortress is an unreasonable requirement, and we are not disposed to burden industrial inventors with such a duty in order to protect the fruits of their efforts. "Improper" will always be a word of many nuances, determined by time, place, and circumstances. We therefore need not proclaim a catalogue of commercial improprieties. Clearly, however, one of its commandments does say "thou shall not appropriate a trade secret through deviousness under circumstances in which countervailing defenses are not reasonably available."

Having concluded that aerial photography, from whatever altitude, is an improper method of discovering the trade secrets exposed during construction of the DuPont plant, we need not worry about whether the flight pattern chosen by the Christophers violated any federal aviation regulations. Regardless of whether the flight was legal or illegal in that sense, the espionage was an improper means of discovering DuPont's trade secret.

The decision of the trial court is affirmed and the case remanded to that court for proceedings on the merits.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.