**AFFIRMED as MODIFIED and Opinion Filed April 30, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-19-01297-CV**
_____

**ERICA WHITLOCK, JERRAMY JAY BOYLES, AND WALTER GALE "TREY" BOYLES, Appellants**

**V.**

**CSI RISK MANAGEMENT, LLC, Appellee**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-05743**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Goldstein

Appellant Erica Whitlock's former employer CSI Risk Management, LLC sued her and two individuals with whom she opened and operated a competing business. The jury answered more than 20 questions; all in favor of CSI except the predicate questions necessary for a punitive damages award. Appellants challenge the jury's answer to virtually every question and the resulting judgment. Although we sustain one issue and reform the judgment to correct an error regarding the basis for the trial court's award of interest, we affirm.

# BACKGROUND

In 2014, CSI, a commercial insurance agency owned and operated by Steve Spalding since 2010, hired Whitlock as a temporary employee who at that time, signed a Non-Compete, Non-Solicitation and Confidentiality Agreement (the Temporary Agreement). When she was converted to a permanent employee a few weeks later, she was asked to sign an Employee Handbook (Handbook) and an Independent Sales Representative Agreement (the Permanent Agreement). Whitlock disputed signing the Permanent Agreement, but admitted signing two other documents received at the same time.

The Temporary Agreement prohibited competition in Dallas County and solicitation of CSI's clients for 13 months following Whitlock's termination, and provided Whitlock's agreement to protect trade secrets, customers, and other information as confidential. The Permanent Agreement provided additional details regarding the defined confidential information, non-solicitation and non-compete provisions, and Whitlock's consent to the reasonableness of the agreement's restrictive covenants. Whitlock worked concurrently as a customer service representative and a sales representative for CSI and was paid both a salary and a share of commissions on insurance policies she sold.

Following her departure and CSI's discovery of information pertaining to her efforts to create and operate a new insurance agency and her sales to former CSI

customers, CSI sued Whitlock and the Boyles. CSI asserted claims against Whitlock for breach of the Temporary and Permanent Agreements, breach of fiduciary duty, tortious interference with contractual relations, and misappropriation of trade secrets and conspiracy, and added the Boyles as defendants for the last two claims. Premised on a letter CSI sent to its clients about Whitlock's activities, Whitlock asserted a defamation counterclaim against CSI and the same cross claim against Spalding. The case proceeded to trial on all claims and the jury returned a verdict in favor of CSI. Following appellants' motions for JNOV and remittitur, the court entered judgment. It also denied a subsequent motion for new trial and motion to disregard jury findings and vacate final judgment.

Raising a total of fourteen issues, twelve of which include painfully multifarious subparts, appellants challenge the jury's answers to virtually every question. We consider each issue in turn.[1]

## DISCUSSION

Because she challenges the legal sufficiency of the evidence on issues on which she did not have the burden of proof,[2] Whitlock must demonstrate no evidence supports the challenged adverse findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

---

[1] Many of appellants' issues raise duplicative arguments. We discuss and resolve each complaint once, regardless of how many times the issue was raised.

[2] We discuss separately the standard of review and burden for Whitlock's defamation counterclaim.

3

Regarding such a challenge, we consider the evidence in the light most favorable to the verdict, "credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). If more than a scintilla of evidence supports the finding, the no evidence challenge fails. *United Services Auto. Ass'n v. Croft*, 175 S.W.3d 457, 463 (Tex. App.—Dallas 2005, no pet.). With respect to a factual sufficiency challenge, we consider all of the evidence in a neutral light and set aside the jury's verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Puig v. High Standards Networking & Computer Serv., Inc.*, No. 01-16-00921-CV, 2017 WL 4820171, at *2 (Tex. App.—Houston [1st Dist.] Oct. 26, 2017, no pet.) (mem. op.). For any sufficiency challenge, we defer to the jury's determination regarding the witnesses' credibility, the weight accorded their testimony, and the jury's resolution of conflicting evidence. *City of Keller*, 168 S.W.3d at 819; *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

Whitlock asserts the trial court erred in granting judgment against her premised on CSI's breach of contract claims. Her first issue, Whitlock alleges CSI's client list was not a confidential trade secret, asserts the Handbook was not a contract and could not support the jury's answer, and also challenges the legal and factual sufficiency of the

4

evidence supporting the jury's answers to questions one and two.[3] The jury answered "yes" to question one regarding Whitlock's agreement to a) the Employee Handbook, and b) the Permanent Agreement, although the jury was instructed not to consider the non-compete provision of the Permanent Agreement.[4] The jury answered the same to each component of question two regarding whether Whitlock failed to comply with either agreement. Similarly, the jury answered question 2A, which asked whether Whitlock failed to comply with the Temporary Agreement, affirmatively.

## A. CSI's confidential information

In one sub-part of her first issue, Whitlock contends no violation of the confidentiality provisions included in the contracts identified in questions one and two[5] could have occurred because CSI's client information was publicly available and thus not a protectable trade secret. CSI responds that the evidence demonstrated its "insurance policies and products, computer programs, networking products, customer lists and contacts, pricing information, vendor contacts and information, marketing

---

[3] Question one asked whether a) Whitlock signed the Permanent Agreement, and b) the Employee Handbook. Question two asked, in sub-parts, whether she failed to comply with either of those agreements.

[4] During a side-bar conference, the trial court determined no pleading supported a claim for breach of the non-compete provisions of the Permanent Agreement and denied a motion for a trial amendment to expressly assert such a claim.

[5] As argued by appellants, CSI concedes that under *McAllen Hospitals, LP v. Lopez,* 576 S.W.3d 389 (Tex. 2019), the Handbook was not a contract and we accordingly disregard it as a potential basis for sustaining the jury's verdict and the judgment.

information and specific customer information" was confidential, not in the public domain, and entitled to protection.

Question eleven and the jury's answer to it inform our analysis of this issue.[6] In that question the jury was asked if CSI owned "a trade secret in the form of a list of actual or potential customers and suppliers." The charge defined "trade secret" as:

> information, including a list of actual or potential customers and suppliers, that–
>
> 1. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> 2. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Although Whitlock objected to submission of question eleven on the grounds that no evidence of a trade secret had been introduced and that potential customers or clients are not trade secrets, she did not object to the trade secret definition. Thus, the court's charge provides the standard by which we measure the sufficiency of the evidence with respect to the existence of a trade secret.[7] *Calce v. Dorado Expl., Inc.,*

---

[6] *See also* subpart I, "Liability for misappropriation of trade secrets" herein addressing issue ten.

[7] The definition tracks the breadth of protectable trade secrets. *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (any formula, pattern, device, or compilation of information used in one's business and which presents an opportunity to obtain an advantage over competitors who do not know or use it, qualifies as a trade secret); *Reliant Hosp. Partners, LLC v. Cornerstone Healthcare Grp. Holdings, Inc.*, 374 S.W.3d 488, 499 (Tex. App.—Dallas 2012, pet. denied). This Court has repeatedly afforded trade secret status to customer lists, pricing information, client information, customer preferences, buyer contacts, and the like. *Reliant Hosp. Partners*, 374 S.W.3d at 499; *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied); *see also Global Water Group, Inc. v. Atchley*, 244 S.W.3d 924, 928 (Tex. App.—Dallas 2008, pet. denied). Likewise, business compilations, as with the materials identified above, are protectable trade

309 S.W.3d 719, 735–36 (Tex. App.—Dallas 2010, no pet.).  The definition recognizes that acquiring protected information through unfair means rather than the ability to legitimately acquire it provides the focus.  *See Reliant Hosp. Partners*, *LLC*, 374 S.W.3d at 499.

Spalding testified about CSI's efforts to maintain the secrecy of its customer lists and related information, its computer system, and its business strategy information, all of which it asserted was confidential.  The jury was informed that CSI hired attorneys to prepare agreements its employees were required to sign evidencing their agreement to protect the information; used a specific software program that limited access to the information and used a log-in and password to track the user's activities in that software; and kept a binder of confidential client information under lock and key.  Further, Spalding testified that by virtue of the Permanent Agreement, Whitlock agreed that CSI's customer lists and contacts were acquired at great expense and were not in the public domain and not available for acquisition from other sources.  CSI also introduced testimony that Whitlock earned at least $62,000 through use of its confidential information, thus circumstantially demonstrating the confidential information's value.

---

secrets when the compilation is neither "generally known" nor "readily available."  *Reliant Hosp. Partners*, *LLC*, 374 S.W.3d at 499; *Eagle Oil & Gas Co. v. Shale Expl.*, *LLC*, 549 S.W.3d 256, 269–70 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ("A compilation of business information that provides a competitive advantage over those who lack the compilation may constitute a trade secret.").

Whitlock asserted that she had contact information for many of CSI's customers because they had contacted her on her cell phone while she worked for CSI, and thus that CSI's data was not confidential. Possession of those customers' phone numbers fails to address the totality of the information CSI asserted was confidential that was also available to Whitlock, for instance the specific underwriters whose policies insured those customers. Likewise, Whitlock's contention that the identity of CSI's customers was disclosed in a group email CSI sent to its customers about Whitlock's departure and her competition fails to acknowledge the information not included in the emails, for instance those customers' pricing information, contact information for those customers other than their email addresses, and the carriers CSI used to insure its customers.

We conclude more than a scintilla of evidence demonstrates CSI's actual and prospective customer information was confidential. Viewing all of the evidence neutrally, we cannot conclude the jury's verdict regarding CSI's ownership of confidential information was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Global Water Grp., Inc. v. Atchley*, 244 S.W.3d 924, 929 (Tex. App.—Dallas 2008, pet. denied) ("The status of the information claimed as a trade secret must be determined through a comparative evaluation of all the relevant factors, including the value, secrecy, and definiteness of the information as well as the nature of the defendant's misconduct.").

8

Finally, in her reply, Whitlock contends inclusion of the Handbook in question two created a *Casteel*[8] problem. We do not consider arguments raised for the first time in reply briefs. *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas 2013, no pet.) (declining to consider argument raised for the first time in a reply brief, which was "wholly different" from arguments raised in opening brief). Moreover, Whitlock fails to demonstrate she objected to inclusion of the Handbook in question two, a further basis for her waiver of the argument. *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 313 (Tex. App.—Texarkana 2003, no pet.) (test for preservation regarding charge error "'is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.'" (quoting *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992)).

We overrule each sub-part of Whitlock's first issue and all portions of her other issues including issue 10B that are dependent on the sufficiency of the evidence supporting the jury's verdict regarding CSI's ownership of confidential information.

**B.    Breach of the Confidentiality Provisions**

Whitlock's second issue attacks the jury's determination in question 2A that she breached the Temporary Agreement.[9] Whitlock alleges the non-compete provision in

---

[8] *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 389 (Tex. 2000).

[9] Question 2A asked if Whitlock failed to comply with "the Non-Compete, Non-Solicitation, and Confidentiality Agreement dated September 2, 2014."

9

that agreement was not enforceable;[10] the trial court erred in allowing CSI to offer evidence contrary to its ruling about that agreement at a temporary restraining order hearing; the trial court erred in allowing the jury to interpret the legal meaning of the contract; and, legally and factually insufficient evidence supports the jury's answer to question 2A.

Although it argues persuasively that the non-compete provision is fully enforceable and that Whitlock waived any potentially valid challenges to it, CSI also argues the confidentiality provisions of both agreements and the non-solicitation provision of the Temporary Agreement support the jury's verdict and thus eliminate the burdens for enforceability of the covenant not to compete. *See* TEX. BUS. & COM. CODE § 15.50 ("(a) Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.") (hereafter CNCA)); *Alex Sheshunoff Mgmt. Svcs, L.P. v. Johnson*, 209 S.W.3d 644, 648-49 (Tex. 2006).

---

[10] Because appellants provide no argument as to why the confidentiality provision in the Permanent Agreement is unenforceable, and we perceive no meaningful difference between enforceability of those provisions in the two Agreements, we analyze breach of both confidentiality provisions together.

We agree that the confidentiality provisions of the Temporary Agreement fall beyond the strictures of the CNCA. *See Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 662 (Tex. App.—Dallas 1992, no writ) (non-disclosure provisions may be enforceable even if remainder of employment contract is not); *see also Neurodiagnostic Consultants, LLC v. Nallia*, No. 03-18-00609-CV, 2019 WL 4231232, at *7 (Tex. App.—Austin Sept. 6, 2019, no pet.) (mem op.) (CNCA does not apply to a claim for damages for violating non-disclosure agreement).[11] We thus reject appellants' arguments premised on the enforceability of the non-compete or non-solicitation provisions in the Temporary Agreement, since the jury was not limited to considering only those provisions and appellants fail to assert the confidentiality provisions lacked force.[12] Accordingly, because reliance on the non-compete and non-solicitation provisions is unnecessary to resolve appellants' arguments regarding question 2A, we

---

[11] As a restraint on trade, however, the non-solicitation provision falls within the scope of the CNCA. *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) ("Covenants that place limits on former employees' professional mobility or restrict their solicitation of the former employers' customers and employees are restraints on trade and are governed by the Act.").

[12] In their factual recitation, appellants asserted Whitlock did not sign the Permanent Agreement and the signature on the document admitted into evidence was a forgery. Even if this contention was properly raised as argument and supported by authorities, *see* TEX. R. APP. P. 38.1, we would reject it given the conflicting and contrary evidence and our obligation to indulge every reasonable inference in support of the jury's verdict. *City of Keller*, 168 S.W.3d at 822.

confine our evaluation of their complaints regarding this question to the confidentiality provision.[13]

The confidentiality provision in the Temporary Agreement provided:

<u>Confidentiality</u>
(Independent Contractor/employee) hereby acknowledges that while working she will have contact with and develop and serve the customers of Company and that in all of his/her activities, and through the nature of complying with his/her obligations pursuant to the business, assets, operations, customers, suppliers, contractual parties and other persons with whom Company does business. The (Independent Contractor/Temp) acknowledges that the Company shall or may in reliance of this agreement provide her access to trade secrets, customers, suppliers and other confidential data and good will. The worker hereby acknowledges and confirms that such information constitutes the exclusive property of Company and she agrees to retain said information as confidential and not to use said information on his or her own behalf or discuss same to any third party.

Although appellants disputed the evidence, the jury was free to believe the testimony of CSI's witnesses that a three-ring binder Whitlock refused to return contained confidential data on a year's worth of CSI's business. CSI's witness testified that all of the information in the binder—names and contact information of insureds, premiums, and notes about each client and their needs—was helpful to Whitlock in forming a competing business. Likewise, CSI provided evidence that Whitlock refused

---

[13] Thus, we need not consider appellants' argument that at the temporary restraining order hearing the trial court defined "hospitality business" as "restaurants and hotels," since the confidentiality provision omits the "hospitality business" restriction included in the non-compete provision.

to return a company laptop provided for her use and by which she had access to CSI's confidential computer system. Although appellants assert that the only customers who testified confirmed they sought out Whitlock rather than having been contacted by her through their confidential contact information, CSI's confidential information was not limited to its customers' contact information. Moreover, appellants ignore CSI's evidence that these customers had Whitlock's cell phone number because she had first contacted them by using CSI's confidential information while employed by CSI. Thus, we conclude more than a scintilla of evidence supported the jury's determination that Whitlock breached the confidentiality provision of the Temporary Agreement, and further conclude the jury's verdict was not contrary to the overwhelming weight of the evidence.

Appellants also contend the trial court erred in submitting question 2A because the court rather than the jury should have interpreted the agreement and determined whether it was enforceable. But the question did not require the jury to interpret anything. It asked whether Whitlock failed to comply with the Temporary Agreement; a disputed factual issue. *See ITT Commercial Fin. Corp. v. Riehn*, 796 S.W.2d 248, 254, n.3 (Tex. App.—Dallas 1990, no writ) (court should submit questions to the jury "concerning the failure of a contract party to conduct himself in accordance with contract requirements").

13

The remainder of the complaints in appellants' second issue focus on enforcement of the non-compete, evidence regarding the reasonableness of the non-compete and CSI's arguments in support of it, and inclusion of the non-compete in submission of question 2A. Although the record suggests appellants likely waived these arguments, the evidence supporting Whitlock's breach of the confidentiality provision moots them. We overrule all of appellants' challenges to the jury's answer to question 2A, including their second issue.

## C. Denial of discovery and error regarding admission of evidence regarding CSI's economic damages

In her third issue, Whitlock contends the trial court committed harmful error when it entered a pre-trial protective order that she claims denied her the right to obtain discovery and ultimately call witnesses—CSI's customers and former customers—regarding CSI's alleged damages. The protective order about which Whitlock complains, as well as Whitlock's failure to allege that she sought the court's permission to obtain the discovery she contends she was denied, belie her argument.

We review discovery orders for an abuse of discretion. *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 787 (Tex. App.—Dallas 2002, pet. denied). Even assuming an abuse of discretion occurred, it will not support reversal unless the complaining party demonstrates that the error probably resulted in an improper judgment. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).

14

The order at issue directed appellants to cease seeking discovery from or serving subpoenas on certain CSI customers identified on a Customer List "provided, in confidence, to Defendants' counsel." It qualified that prohibition: "[s]uch discovery may only be sent to a Client or Customer on the Customer List with written authorization from this Court." On its face, the order permitted appellants to subpoena CSI's customers if they obtained written authorization from the trial court. Contrary to appellants' arguments, the order did not prohibit them from seeking discovery from other customers within their knowledge or seeking the identity of additional customers from CSI if appellants believed all relevant customers had not been identified. Appellants fail to demonstrate that they ever requested permission to seek discovery from any witness following entry of the order, let alone the trial court's denial of any such request. Nor do appellants demonstrate that CSI withheld the identity of former customers, that they ever complained to the trial court about any such discovery issue, or that the order limited their trial presentation or precluded them from calling any witness.[14] Thus, any error with respect to the order, if indeed one was committed, was waived by appellants'

---

[14] Further, Whitlock's complaints that "she was not even permitted to put on evidence that claimed clients were not actually clients or the reasons that they elected not to do business with Appellees" lacks any supporting record reference. We will not scour the record to determine whether support exists for a factual assertion or argument. *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797 (Tex. 2008) (per curiam) ("We will not consider factual assertions that appear solely in briefs and are not supported by the appellate record.").

failure to request the relief it allowed, or demonstrate that they sought and were denied the identity of CSI customers whose testimony might have changed the outcome at trial. Because appellants failed to carry their burden with respect to any potential harm, we decline to examine the trial court's order for an abuse of discretion. TEX. R. APP. P. 44.1; *see also KMS Retail Rowlett, L.P. v. City of Rowlett,* 559 S.W.3d 192, 197–198 n.5 (Tex. App.—Dallas 2017), *aff'd,* 2019 WL 2147205 (Tex. May 17, 2019) (declining to address the merits of evidentiary objections to summary judgment evidence where appellant failed to allege the evidence probably resulted in the rendition of an improper judgment). We conclude appellants failed to demonstrate any error with respect to the order, and accordingly overrule their third issue.

**D. Evidence regarding CSI's undisclosed theory of recovery**

To the extent it does not duplicate arguments raised in other issues, issue four challenges evidentiary rulings regarding admission of evidence and a theory of recovery appellants contend was not disclosed prior to trial. The argument focuses on whether CSI pleaded and disclosed breach of the non-competition provision in the Permanent Agreement or relied solely on the non-competition provision in the Temporary Agreement. The distinction between the scope of the two provisions gives rise to the argument. The Temporary Agreement prohibited competition for 13 months following termination with respect to substantially similar businesses or those competitive with CSI, and "applied" to Dallas County. The broader Permanent Agreement prohibited,

16

within a 75-mile radius of CSI's Dallas office, competition in any manner in any business activity in which CSI engaged during the term of the agreement.

Appellants contend that prior to trial CSI had never asserted that Whitlock was prohibited from selling to anyone outside of Dallas County if she was located within Dallas County while she made the sale. They thus argue the trial court erred by admitting damages evidence related to sales made to clients who were outside of Dallas County.[15] Appellants however, ignore the portions of CSI's pleadings and disclosures that provide notice of CSI's theory and damages calculation premised on misappropriation and use of its confidential information and breach of the non-solicitation provisions of both contracts, which is the same evidence appellants contend should have been inadmissible in relation to the undisclosed theory. Any failure to disclose the theory by which Whitlock may have breached the non-compete provision in either agreement had no bearing on whether the challenged damages information was inadmissible, since the same damages information was relevant to the other disclosed theories. *See LaBeth v. Pasadena Bayshore Hosp., Inc.*, No. 14-10-01237-CV, 2012 WL 113050, at *5 (Tex. App.—Houston [14th Dist.] Jan. 12, 2012, pet. denied) (mem. op.) (rules require

---

[15] During a bench conference and based on CSI's live pleading and its disclosures that referenced only the non-compete provision in the Temporary Agreement, the trial court ruled that CSI could admit evidence about the non-solicitation and confidentiality provisions of the Permanent Agreement, but it could not rely on the non-compete provision in that agreement. Thus, question two, which inquired about Whitlock's breach of the Permanent Agreement, instructed the jury not to consider paragraph 8, the Permanent Agreement's non-compete provision.

disclosure of party's "basic assertions" and exclusion is not warranted when opposing party was not surprised or prejudiced by legal theories at issue); *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 442 (Tex. App.—Austin 2009, no pet.) ("In other words, a trial court does not abuse its discretion in admitting or excluding evidence if it reaches the right result for the wrong reason."); *see also Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008) ("Erroneous admission of evidence is harmless unless the error probably (though not necessarily) caused rendition of an improper judgment."). Even if the damages evidence—Whitlock's sales to CSI's clients, including those located outside of Dallas County as evidence of CSI's lost commissions and sales—had not been disclosed, Whitlock objected to CSI's damages exhibits based only on relevance. Any objection premised on failure to produce the evidence prior to trial, a contention not supported by the record, was waived. *See Morales v. Rice*, 388 S.W.3d 376, 381 (Tex. App.—El Paso 2012, no pet.) ("Error is preserved with regard to a ruling that admits evidence if the opponent of the evidence makes a timely, specific objection and obtains a ruling."); *Talley Const. Co. v. Rodriguez*, No. 01-03-01147-CV, 2006 WL 908180, at *4 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op.) (failure to raise specific objection to challenged evidence waives objection). We overrule appellants' fourth issue.

18

**E.   Testimony following alleged violation of the Rule**

Appellants' fifth issue complains the trial court erred in allowing testimony after violation of the Rule.[16]  During a break, appellants' counsel heard yelling between what she thought was a witness whose testimony was not yet complete, Carter, and a witness who had not yet testified, Spalding.  After appellants raised their objection, CSI's counsel informed the trial court that he, rather than Spalding, had been yelling, and that he was yelling at Spalding, rather than Spalding yelling at Carter.  The trial judge questioned Carter, whose testimony had begun prior to the break.  Carter confirmed he had overheard an exchange between Spalding and CSI's counsel, but said it was not about his or Spalding's testimony.  The trial court then permitted appellants' counsel to question Carter, who testified the conversation had been about documents not identified in his presence and that were not at the courthouse.  CSI's lawyer clarified that he had yelled at his client instructing him to stop pressuring the lawyer, and outside of Carter's presence had instructed a paralegal to locate a specific production report.  The trial judge determined neither witness had disclosed his anticipated testimony in the presence of the other, although she also cautioned the parties and witnesses that if one witness had suggested what the other should testify about, those statements would violate the court's

---

[16] TEX. R. EVID. 614 ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.").

19

orders. She also observed that she had previously ruled during the trial that Carter was not permitted to testify about production reports, which were the subject of the exchange Carter had overheard. The trial judge then allowed Carter to continue his testimony and subsequently allowed Spalding to also testify.

With certain inapplicable exceptions, Rule 614 provides for the exclusion of witnesses from the courtroom during the testimony of other witnesses. TEX. R. EVID. 614. If the Rule is violated and depending on the circumstances, the judge may allow the testimony, exclude the testimony, or hold the violator in contempt. *In the Interest of A.H.J.*, No. 05-15-00501-CV, 2015 WL 5866256, at *7 (Tex. App.—Dallas Oct. 8, 2015, pet. denied) (mem. op). We review such rulings for an abuse of discretion, but absent harm, even an incorrect ruling will not justify reversal. *Id.*

Given Carter's testimony about the exchange, appellants fail to demonstrate how or why the trial court's determination that the Rule had not been violated was error. Even if they had done so, however, they wholly fail to address how any such error was harmful. *Id.* (concluding no reversible error from violation of the Rule where appellant failed to show how the violation affected the subsequent testimony). We overrule appellants' fifth issue.

## F.      Damages award

Issue six, as well as several preceding and subsequent sub-issues, attacks the damages award. Appellants contend the trial court submitted an incorrect measure of

damages and the evidence is legally and factually insufficient to support the jury's awards in answer to questions three and 3A, the damages questions related to breach of the different contracts.[17] Specifically, appellants argue CSI's damages evidence was an improper measure of its damages because 1) instead of offering evidence of its own damages CSI relied on evidence of Whitlock's earnings after she left CSI; 2) Whitlock's earnings from sales to CSI's clients included premiums earned from businesses that fell outside the scope of the Temporary Agreement's non-compete provision; 3) premiums charged did not provide a fair measure of Whitlock's earnings; 4) CSI relied on lost gross revenue instead of net revenue; and 5) CSI failed to demonstrate causation between the damages the jury awarded and Whitlock's breaches of the agreements and her misappropriation of trade secrets.[18]

The jury awarded the same damages for each of CSI's claims: $140,000 for damages sustained in the past and $170,000 for future losses, and the judgment allowed a total recovery of $310,000, plus attorney's fees. Accordingly, to sustain the award we need only conclude the measure of damages was correct as to one of the claims. *See,*

---

[17] Those questions, properly conditioned on preceding liability answers, instructed the jury to award damages for loss of commissions and fees sustained in the past and loss of commissions and fees that, in reasonable probability, would be sustained in the future. Similarly, question seven, which was predicated on a liability finding for breach of a fiduciary duty, provided the same instruction for a damages award. Question eight, also predicated on a liability finding for breach of a fiduciary duty, asked the jury to determine the amount of commissions and fees Whitlock received as a result of obtaining insurance policies for CSI's former clients.

[18] Appellants include a sub-point in their tenth issue arguing that no evidence supports the damages award for misappropriation of trade secrets, but in support incorporate their arguments from issue six. We address all arguments regarding damages in the discussion above.

21

*e.g., Lundy v. Masson*, 260 S.W.3d 482, 506 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("When, as in this case, the plaintiff establishes separate theories of liability based on the same facts and fails to elect between more than one recovery, the appellate court should render judgment on the finding affording the greatest recovery."). We first address appellants' contention that CSI relied on an incorrect measure of damages and inapplicable or incomplete evidence to support the damages award.

### 1. Measure of damages and evidence supporting the amount awarded

With the exception of the tortious interference claim, every damages question submitted to the jury by CSI involved loss of trade secrets or, relatedly, failure to maintain the confidentiality of CSI's confidential information as required by both contracts. The measure of injury for these claims consequently focuses on the value of the lost trade secrets and confidential information. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710–11 (Tex. 2016) ("Damages in misappropriation cases can therefore take several forms, including the value of the plaintiff's lost profits, the defendant's actual profits from the use of the secret, the value a reasonably prudent investor would have paid for the trade secret, the development costs the defendant avoided by the misappropriation, and a reasonable royalty."). Comparatively, the loss of the contracts with which CSI alleged Whitlock interfered—the sales agreements between CSI and its former customers without regard to the location of the customers or

any time-limitation created by the terms of the non-compete provisions[19]—demonstrates the lost benefit of the bargain and thus the measure of damages for CSI's tortious interference claim. *See Palla v. Bio-One, Inc.*, 424 S.W.3d 722, 726 (Tex. App.—Dallas 2014, no pet.).

Recovery of lost profits as damages are generally allowed where the evidence demonstrates that "a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty." *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 860 (Tex. 2017) (internal quotation omitted). Although exact calculation is not necessary, recovering lost profits, future or past, requires competent evidence demonstrating the loss amount with reasonable certainty, and opinions regarding the loss amount must rest upon objective facts, figures, or data. *Holt Atherton Indus. Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). CSI's entitlement to damages for any claim also required it to provide evidence "supporting a single complete calculation," for that claim, including if applicable, credits and expenses. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 878 (Tex. 2010).

The jury determined that Whitlock received $62,000 in commissions from sales to CSI's former clients. The evidence supporting that number was derived from a

---

[19] Thus, appellants' arguments and reliance on evidence regarding the location of the clients at issue and the nature of their business does not inform the factual sufficiency of the damages award.

spreadsheet introduced by CSI that reflected specific sales amounts to specific customers made by Whitlock after her departure from CSI. One column on the spreadsheet reflected "agency commissions" and provided the gross sales amounts that would have been received by CSI if the sales had been made by CSI rather than Whitlock. Additional testimony from CSI's witness demonstrated individual sales do not impact its fixed expenses, and thus CSI's lost profits as measured by Whitlock's sales to CSI's former customers was a net number for CSI. CSI also provided evidence that its customers are generally retained for multiple years and the loss of one customer thus impacts income for several years. More specifically, in 2017 after Whitlock left, CSI lost between 40–45% of its business, although it also provided evidence that on average it had previously retained 85% of its business annually, and that many customers stay with CSI for 6–8 years, although some stay 10–15 years.[20] Moreover, one client who switched his business to Whitlock testified that he generally did not move his business and would not have done so had Whitlock not been at a new firm.[21] Thus, evidence of Whitlock's sales to CSI's former clients coupled with the percentage decrease in CSI's client retention as compared to its prior retention, is evidence of CSI's losses.

---

[20] The same information also supports the inference that CSI was a going concern that would have continued operating profitably for the foreseeable future, although appellants do not challenge that aspect of CSI's entitlement to recover future lost profits.

[21] *Id.*

24

Although CSI concedes the absence of any obvious explanation for how the jury calculated damages, the award does not become improper or unsupported legally or factually on that basis. *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 403 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (lack of clarity in jury's reasoning for damages award provides no basis to disregard the award, if the award is "within the range permitted by the evidence"). A jury has discretion to award damages within the range permitted by the evidence, as long as a rational basis exists for the jury's damage calculation. *Id.* Assuming the jury determined CSI would have retained 85% of the $62,000 Whitlock received in sales to former CSI clients, it could have extrapolated the amounts awarded as damages sustained in the years between Whitlock's departure and the trial by multiplying $62,000 by 85% and carrying it forward and back several years.[22] This evidence amounts to more than a scintilla, as well as a rational basis to support the jury's award, and further demonstrates that the jury's award was not contrary to the overwhelming weight of the evidence. *See Picard v. Badgett*, No. 14-19-00006-CV, 2021 WL 786817, at *18 (Tex. App.—Houston [14th Dist.] Mar. 2, 2021, no pet. h.) (mem. op.) (damages within the range of the evidence presented, including percentage of clients lost following breach and value of that percentage, provided "rational basis" for lost profit award). We overrule appellants' sixth issue and all issues and sub-issues

---

[22] In closing, CSI's attorney asserted it would suffer losses for six years in the future and asked the jury not to limit the damage award to one year of losses.

challenging the measure of damages and those challenging the legal and factual sufficiency regarding the amount of the award.

## 2. Causation

Appellants also contends no causation connects any of Whitlock's or the Boyles's conduct[23] with the damages awarded by the jury. "[T]he existence and nature of certain basic conditions, proof of a logical sequence of events, and temporal proximity between an occurrence and the conditions" suffices to support causation. *Guevara v. Ferrer*, 247 S.W.3d 662, 667 (Tex. 2007); *Perez v. Johnson*, No. 02-19-00082-CV, 2020 WL 5552139, at *2 (Tex. App.—Fort Worth Sept. 17, 2020, no pet.) (mem. op.). Here, ample evidence supports causation.

Beginning in February 2015, Whitlock began communicating with Jay Boyles and Trey Boyles about starting a new agency together, and confirmed those communications in texts to friends. In other texts in late 2015, she referenced a specific CSI customer as "hers." The day before she resigned, Whitlock exchanged emails with the Boyles that evidenced payment for Error & Omissions coverage for a new agency, AAA Insurance Planning Services, LLC d/b/a Atless Insurance. An assumed name certificate included in the email string demonstrated the entity was owned by Jay Boyles

---

[23] Appellants attack causation between the damages awarded only with respect to the misappropriation and conspiracy claims, the only claims asserted against the Boyles.

26

and had been created in February 2016. Whitlock forwarded the string to her Atless email account, which she had set up while still working at CSI.

Additional evidence demonstrates Whitlock's efforts to write coverage from the new agency for CSI's customers. For instance, in an email string with a long-standing CSI customer that began in February 2016 when the customer began asking for a quote for insurance and renewal for the corporate entity owned by the customer, Whitlock informed the customer only after she left CSI, from her new email account at Atless that she was working on the quotes. In the four weeks after leaving CSI, Whitlock had calls with multiple CSI customers. Ultimately, in the months following her departure from CSI, Whitlock through Atless wrote policies for 15 of CSI's former customers. Although Whitlock testified that these customers contacted her on her personal cell phone based on the rapport she had developed with them, this information underscores the purpose of CSI's efforts to protect its customer information as confidential and prohibit Whitlock's competition. *See Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 387 (Tex. 1991) ("The fundamental legitimate business interest that may be protected by such covenants is in preventing employees or departing partners from using the business contacts and rapport established during the relationship of representing the accounting firm to take the firm's customers with him."). These events, their logical sequence, and the temporal relation between appellants' activities and CSI's losses provide legally and factually sufficient evidence supporting causation between

27

appellants' misappropriation and the damages. We overrule appellants' challenges to causation supporting the damages award.

## G.    Attorney's Fees

Appellants' seventh issue attacks the attorney's fee award, contending CSI failed to segregate fees for parties who were no longer present in the case at trial, as well as for abandoned claims and claims on which summary judgment had been granted.[24]  The record belies each argument.

A party seeking to recover attorney's fees must demonstrate that the fees were reasonable and necessary, a burden that includes showing the fees were incurred with respect to a claim that provides for their recovery.  *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10–11 (Tex. 1991).  Thus, absent an exception, fees incurred in pursuing claims for which fees are not recoverable must be segregated from fees incurred with respect to claims for which fees are recoverable.  *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312–13 (Tex. 2006); *Emerson Elec. Co. v. Am. Permanent Ware Co.*, 201 S.W.3d 301, 316 (Tex. App.—Dallas 2006, no pet.).

---

[24] Whitlock also argues generally that CSI failed to justify the reasonableness of the fees it requested as required by *Arthur Andersen & Company v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  Because she fails to include sufficient argument regarding any purportedly missing factors, however, Whitlock failed to preserve any error regarding this complaint. *See Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 840 (Tex. App.—Dallas 2000, no pet.) ("Because . . . Favaloro does nothing more than summarily state his point of error, without citation to legal authority or substantive analysis, we conclude he has failed to preserve these arguments for review.").

CSI's attorney testified he segregated fees out of what was requested for work incurred with respect to defendants who had been dismissed prior to trial. He also testified he segregated out fees related to Whitlock's counterclaim, as well as CSI's tort claims on which fees were not recoverable. CSI admitted two exhibits reflecting its counsel's fees, both of which were marked to show segregated fees that were not requested. CSI's attorney testified as to the total amount remaining, after he subtracted the segregated fees, which was the amount the jury awarded. We conclude CSI satisfied its burden to segregate fees that were not recoverable from those that were and overrule appellants' seventh issue.

## H. The sufficiency of the evidence supporting Whitlock's liability for breach of fiduciary duty and tortious interference

Issue eight attacks the sufficiency of the evidence supporting questions five through eight regarding Whitlock's breach of fiduciary duty. Issue nine attacks the sufficiency of the evidence supporting the jury's answers to questions nine and ten which addressed Whitlock's tortious interference and associated damages. While we would conclude the law and the record support the jury's answers to these questions, including the existence of a contractual relationship between an insurance agent and the insured client, we need not do so because any error would not entitle Whitlock to reversal. *See* TEX. R. APP. P. 44.1 (No judgment reversed on appeal unless complained of error probably caused the rendition of an improper judgment).

The jury found a total of $310,000 in damages arising from each claim entitling CSI to the same amount of actual damages awarded by the jury for the breach of contract claim—that we have already affirmed—as for any breach of fiduciary duty, tortious interference, misappropriation or conspiracy that we discuss below. CSI was required to elect its remedy and the judgment accordingly awarded only $310,000.[25] Thus, even if error occurred with respect to any of the jury's answers to questions regarding Whitlock's breach of fiduciary duty or tortious interference, such error could not have been harmful. *See Petrohawk Props., L.P. v. Jones*, 455 S.W.3d 753, 773 (Tex. App.—Texarkana 2015, pet. dism'd) (error in charge harmless "when the findings of the jury in answer to other issues are sufficient to support the judgment.") (internal quotation omitted)). Because we need not address issues eight and nine to dispose of this appeal, we overrule them without further discussion. TEX. R. APP. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal); *see also Fritts v. McDowell*, No. 02-16-00373-CV, 2017 WL 3821889, at *8, n.12 (Tex. App.—Fort Worth Aug. 31, 2017, pet. denied) (mem. op.) (no need to address issues where resolution of other issues determines disposition).

---

[25] Because the judgment was joint and several as to all three defendants and only the misappropriation claim allowed for recovery of fees against the Boyles, we surmise CSI elected to recover pursuant to that claim.

## I.    Liability for misappropriation of trade secrets

Issue ten attacks the jury's answers to questions 11–13, premised on whether CSI's customer list was a trade secret[26] and Whitlock's and the Boyles's misappropriation of that information. Appellants assert no evidence demonstrates their improper acquisition or use of CSI's trade secrets; no evidence demonstrates causation for the damages; and the trial court erred in submitting question 12, which was the pattern charge for a section 134A.002[27] claim rather than the common-law misappropriation claim pleaded by CSI; and question 12 omitted the "clear and convincing" standard required for recovery under the statute.

To recover on its misappropriation of trade secret claim, CSI was required to establish 1) the existence of a trade secret; 2) acquired by appellants through a breach of a confidential relationship or discovery by improper means; (3) use by appellants, without CSI's authorization; and 4) CSI's resulting damages. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366–67 (Tex. App.— Dallas 2009, pet. denied). In attacking the legal and factual sufficiency of the evidence supporting the jury's answers in favor of CSI regarding this claim, appellants contend

---

[26] Appellants' argument regarding the sufficiency of the evidence supporting the jury's determination that CSI's customer or supplier list was a trade secret incorporates their argument regarding the same subject from issue one. Because we overruled the same argument with respect to issue one, we need not address it again.

[27] TEX. CIV. PRAC. & REM. CODE § 134A.

31

CSI was required to obtain a ruling that Jay Boyles and Trey Boyles owed it a fiduciary duty. But even the authority cited by appellants for this proposition does not support their argument, since acquisition by "improper means" suffices. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366–67 (Tex. App.—Dallas 2009, pet. denied) (acquisition through breach of a confidential relationship *or* improper means). Indeed, "'[a] complete catalogue of improper means is not possible. . . [but generally] they are means which fall below the generally accepted standards of commercial morality and reasonable conduct.'" *Lamont v. Vaquillas Energy Lopeno Ltd., LLP*, 421 S.W.3d 198, 213 (Tex. App.—San Antonio 2013, pet. denied) (quoting *E.I. duPont deNemours & Co. v. Christopher,* 431 F.2d 1012, 1015–16 (5th Cir. 1970) (applying Texas law)).

Here, the jury heard ample evidence in support of the Boyles's acquisition of CSI's trade secrets through Whitlock's breach of her confidential relationship,[28] conduct the jury could correctly have deemed "improper." For instance, CSI's former attorney testified about a conversation he overheard between Spalding and Jay Boyles at a December 2015 sporting event in which Boyles offered to purchase CSI. When Spalding declined the offer, Boyles told Spalding, "that's okay . . . I've already got someone that works for you to give me all of your client records. We'll just take your

---

[28] In response to question six the jury determined Whitlock breached her fiduciary duty to CSI.

32

business."  Although Boyles denied the attorney was part of the conversation and claimed Spalding had asked Boyles to purchase the business, the jury decides which witnesses to believe. *Gamache v. Baker*, No. 05-92-02487-CV, 1993 WL 532064, at *1 (Tex. App.—Dallas Dec. 23, 1993, no writ) (mem. op.).  The jury also heard testimony that in written correspondence to one of CSI's competitors and while Whitlock was working for CSI, Trey Boyles referred to Whitlock as "one of our assistants."  Trey Boyles was the owner of Atless and filed its assumed name certificate.  Trey Boyles admitted Whitlock assisted him in obtaining Errors & Omissions insurance for the new agency, while she was employed by CSI.  And in addition to threatening to take CSI's business using one of CSI's employees, Jay Boyles loaned Trey money to start the new agency and was originally listed as a manager in Atless's formation documents.  Thus, contrary to appellants' arguments, even when viewing all of the evidence in a neutral light, the jury's verdict was not contrary to the overwhelming weight of the evidence, nor was it unsupported by only a scintilla of evidence.

Appellants also argue no evidence demonstrates their use of the confidential information, but ignore CSI's response that Whitlock's failure to return the laptop through which she could access CSI's confidential website and the three-ring binder containing extensive information about its customers, was circumstantial evidence demonstrating appellants' intent to use that information in their competing business. *Cf. Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 465 (Tex. App.—

Austin 2004, pet. denied) (appellant's failure to explain how confidential information received by appellee could have been used "to a competitive advantage" where the information which had nothing to do with appellee's business, demonstrated stacked inferences rather than circumstantial evidence). Utilizing the correct standard and burden for the distinct legal and factual sufficiency challenges, we conclude this evidence is sufficient to defeat both challenges.

Finally, although CSI refutes the factual basis for appellants' complaints about question twelve, we also observe appellants fail to demonstrate or even assert that prior to its submission, they raised any objection to the question. Accordingly, appellants waived any error with respect to the form of the question. *Heatley v. Red Oak 86, L.P.*, No. 05-18-01083-CV, __ S.W.3d __, 2020 WL 4745553, at *10 (Tex. App.—Dallas Aug. 17, 2020, no pet.). We overrule appellants' tenth issue.

## J. Liability for conspiracy

Issue eleven rests on appellants' assertion that liability for conspiracy fails absent an underlying tort and their related contention that the jury erred in concluding they misappropriated CSI's trade secrets. *See Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–43 (Tex. 2019) (civil conspiracy depends on injury caused by underlying tort or illegal conduct). We concluded above, however, that sufficient evidence supports the jury's answers to the misappropriation of trade secrets questions.

34

Further, we reject appellants' arguments that they could not have conspired absent knowledge of the confidentiality and non-compete agreements that bound Whitlock. Their liability for misappropriation does not rest on knowledge of the non-compete, but instead on their improper acquisition of trade secrets. *See Tex. Integrated Conveyor Sys., Inc.,* 300 S.W.3d at 366–67. And appellants' arguments regarding an absence of evidence supporting a meeting of the minds fails in light of CSI's evidence that neither of the Boyles had experience operating an insurance agency, and because neither was licensed neither could have operated Atless without Whitlock. Whitlock testified that she assisted Jay and Trey Boyles in getting Atless started and both needed her to assist them in getting their own insurance licenses. The jury also learned that another Atless employee, who was concurrently working for Jay Boyles at a roofing company Boyles owned (and for which Whitlock also served as an independent contractor), solicited business from CSI's customers because Whitlock instructed him to do so. Moreover, as discussed above regarding his threat to take CSI's business by using an "insider" and contrary to appellants' assertion, Jay Boyles's liability does not rest solely on his role as a lender to his brother. When coupled with the evidence regarding misappropriation, this evidence provides legally and factually sufficient evidence supporting the existence of each element of the claim. *See Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex. 1963) (related acts of defendants gave rise to "inferences and deductions of concerted action and common design which may properly be drawn by, and are

35

peculiarly within the province of, the trier of facts."). We conclude legally and factually sufficient evidence supports the jury's determination that appellants engaged in a conspiracy. *See Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 926 (Tex. 1979). We overrule issue eleven.

## K.    Whitlock's counterclaim and crossclaim

Whitlock asserted a counterclaim against CSI and a crossclaim against Spalding for defamation. The claim rested on statements in a letter CSI sent to its customers in which it advised its clients of Whitlock's departure, and stated:

> [P]lease rest assured that your current policies of insurance through CSI are in full force and effect. All of our CSI insurance carrier partners have been notified of Ms. Whitlock's criminal activity and have vowed to support CSI in stopping Ms. Whitlock's inappropriate, criminal and dangerous conduct. All of us here at CSI will continue to strive to deliver the best client service possible, and we will make every effort to ensure your satisfaction.

As the party who had the burden of proof regarding her defamation claim, succeeding on her legal sufficiency contention required Whitlock to demonstrate that the evidence established the facts supporting her claim as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). With respect to her factual sufficiency challenge regarding the same claim, Whitlock must demonstrate the jury's failure to find that the challenged statements were defamatory was against the great weight and preponderance of the evidence. *Id.* In light of CSI's evidence regarding the truth of the challenged statements, Whitlock can do neither.

36

Truth provides an absolute defense to a defamation claim. *Iroh v. Igwe*, 461 S.W.3d 253, 264 (Tex. App.—Dallas 2015, pet. denied); *Knox v. Taylor*, 992 S.W.2d 40, 54 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The statements need not be literally true; rather, the 'substantial truth' is sufficient."). CSI's witnesses testified that despite demand, Whitlock refused to return a laptop that belonged to CSI and used CSI's Staple's account without permission to purchase office supplies that CSI never received. The attorney who drafted the letter at issue testified that the description of Whitlock's conduct as "criminal," "inappropriate," and "dangerous" referred to her theft of the laptop, the office supplies, and CSI's trade secrets. We conclude CSI's evidence regarding the truth of the challenged statements was sufficient to defeat Whitlock's legal and factual sufficiency challenges.[29]

## L. Pre- and post-judgment interest

The judgment awarded pre- and post-judgment interest, "[p]ursuant to Sections 304.003, 304.102 and 304.103 of the Texas Finance Code."[30] Issue 13 challenges the award but not the amount of both, contending these finance code provisions apply only to cases involving wrongful death, personal injury, or property damage.

---

[29] CSI had the burden of demonstrating the truth of the allegedly defamatory statements. *Knox,* 992 S.W.2d at 54.

[30] "A money judgment of a court of this state to which Section 304.002 does not apply, including court costs awarded in the judgment and prejudgment interest, if any, earns post-judgment interest at the rate determined under this section." TEX. FIN. CODE § 304.003(a). "A judgment in a wrongful death, personal injury, or property damage case earns prejudgment interest." TEX. FIN. CODE § 304.102. "Prejudgment Interest Rate for Wrongful Death, Personal Injury, or Property Damage Cases." TEX. FIN. CODE § 304.103.

Appellants are correct with respect to finance code sections 304.102 and 304.103. We see no basis for their application to this case. Section 304.003, however, has no subject matter limitation and applies generally to judgments not otherwise governed by section 304.002.[31] TEX. FIN. CODE § 304.001 (money judgments must allow for post-judgment interest).

"General principles of equity" as well as enabling statutes allow for the recovery of prejudgment interest. *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). When, as here, no statute controls the award of prejudgment interest, whether to award prejudgment interest is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy when making that decision. *Ponderosa Pine Energy, LLC, v Illinova Generating, Co.,* No. 05-15-0339-CV, 2016 W.L 3902559, at *7 (Tex. App.—Dallas, July 14, 2016) (mem. op.); *see also DeGroot v. DeGroot,* 369 S.W.3d 918, 926 (Tex. App.—Dallas 2012, no pet.) (reviewing award of prejudgment interest for abuse of discretion); *Bufkin v. Bufkin*, 259 S.W.3d 343, 356 (Tex. App.—Dallas 2008, pet. denied) (same)). Under this standard, we will not disturb a trial court's findings on factual issues unless the court reasonably could have reached only one decision and failed to do so. *Ponderosa Pine Energy, LLC*, 2016 WL 3902559, at *7.

---

[31] Section 304.002 governs postjudgment interest for judgments premised on contracts.

38

"Prejudgment interest is compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Ventling v. Johnson*, 466 S.W.3d 143, 153 (Tex. 2015). Prejudgment interest accrues from the earlier of: (1) 180 days after the date a defendant receives written notice of a claim, or (2) the date suit is filed, and until the day before the judgment. *Long v. Castle Tex. Prods. Ltd. P'ship*, 426 S.W.3d 73, 77 (Tex. 2014) (citing *Johnson & Higgins*, 962 S.W.2d at 531). "A 'claim' is 'a demand for compensation or an assertion of a right to be paid.'" *Johnson & Higgins*, 962 S.W.2d at 531 (citing *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App.—Austin 1995, writ denied); *Claim*, BLACK'S LAW DICTIONARY 247 (6th ed. 1991) (a "claim" is a "demand for money or property as of right")). A defendant has notice of a claim for purposes of prejudgment interest only if the plaintiff's written notice communicates that the plaintiff is claiming a right to compensation and provides enough information that the defendant could plausibly settle the claim without incurring interest. *Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing *Johnson & Higgins*, 962 S.W.2d at 531; *Owens–Ill., Inc. v. Estate of Burt*, 897 S.W.2d 765, 769 (Tex. 1995)).

The trial court calculated prejudgment interest commencing on the 181st day after suit was filed until July 11, 2019, 18 days before the judgment. Appellant does not challenge the principles of equity permitting the trial court's discretion in awarding

39

prejudgment interest, or the calculation thereunder. The unchallenged finding supports the trial court's judgment and we find no abuse of discretion in the award of prejudgment interest.

Thus, although references to section 304.102 and 304.103 have no application here, the trial court did not err in relying on section 304.002 or awarding the post-judgment interest included in the judgment. Accordingly, we sustain issue 13 and reform the judgment to delete reference to finance code sections 304.102 and 304.102. *See* TEX. R. APP. P. 43.2 (court of appeals may modify the trial court's judgment and affirm it as modified); *Am. Paper Stock Co. v. Howard*, 528 S.W.2d 576, 577 (Tex. 1975) (reforming judgment to correct erroneous interest award).

## M.   Cumulative errors

In their final issue, appellants complain in a single sentence that the "cumulative errors by the trial court resulted in harm when aggregated." This issue fails to comply with TEX. R. APP. P. 38.1 and in light of our detailed consideration of appellants' substantive arguments above, we overrule it.

## CONCLUSION

We sustain appellants' issue 13 and reform the judgment to delete references to the inapplicable sections of the finance code.  As modified, and in all other respects, we affirm the judgment.


/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE


191297F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ERICA WHITLOCK, JERRAMY JAY BOYLES, AND WALTER GALE "TREY" BOYLES, Appellants

No. 05-19-01297-CV      V.

CSI RISK MANAGEMENT, LLC, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-16-05743. Opinion delivered by Justice Goldstein. Justices Partida-Kipness and Pedersen participating.

Based on the Court's opinion of this date, we **MODIFY** the judgment as follows: We **DELETE** reference to finance code sections 304.102 and 304.102.

As modified, we **AFFIRM** the trial court's judgment.

It is **ORDERED** that appellee CSI RISK MANAGEMENT, LLC recover its costs of this appeal from appellants ERICA WHITLOCK, JERRAMY JAY BOYLES, AND WALTER GALE "TREY" BOYLES.

Judgment entered April 30, 2021.